UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHARON O'KEEFE,

        Plaintiff,

 -against-               1:06-CV-329
                      (LEK/DEP)
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

**I. BACKGROUND**

 **A. Procedural History**

Plaintiff Sharon O'Keefe ("Plaintiff") filed an application for Supplemental Security Income ("SSI") on March 22, 2004 and an application for Disability Insurance Benefits ("DIB") on April 12, 2004. Dkt. No. 7, Administrative Transcript ("AT"), 68-70, 224-26. The applications were denied initially. AT 29-34, 227. A request was made for a hearing. AT 35. A hearing was held before an Administrative Law Judge ("ALJ") on May 3, 2005. AT 231-58. In a decision dated June 15, 2005, the ALJ found that Plaintiff was not disabled. AT 13-24. The Appeals Council denied Plaintiff's request for review on January 30, 2006. AT 5-8. Plaintiff commenced this action on March 14, 2006 pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision. Dkt. No. 1, Compl.

 **B. Contentions**

Plaintiff makes the following claims:

 (1) The Commissioner failed to develop fully the administrative record. Plntf's Brief, at 12 (Dkt. No. 8).

 (2) The Commissioner erred by failing to find that Plaintiff's arthritis and depressive

disorder were severe impairments.  Id. at 11.

(3) The Commissioner erred by failing to find that Plaintiff's obesity, anxiety, and agoraphobia meet a listed impairment.  Id. at 11.

(4) The Commissioner failed to make a proper credibility determination.  Id. at 13-14.

(5) The Commissioner's determination that Plaintiff is not disabled is not supported by substantial evidence.  Id. at 14-15.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.  Deft's Brief (Dkt. No. 9).

**C.    Facts**

Plaintiff was thirty-five years old at the time of the hearing.  AT 235.  Plaintiff completed one year of college.  AT 98, 235.  Plaintiff last worked as a secretary.  AT 83.  Plaintiff claimed that she stopped working on July 2, 2003, AT 82, but she subsequently attempted to work at various jobs until January 29, 2004.  AT 120.  She alleges disability due to severe morbid obesity, agoraphobia, arthritis, and narcolepsy or idiopathic hypersomnolence.[1]  AT 82.

**1.    Physical Condition**

From February of 2004 to January of 2005, Plaintiff treated with Edgar Henriques, M.D.  AT 168-82, 218-22.  On February 20, 2004, Dr. Henriques performed a hysteroscopy[2] and "D&C"[3] due to dysfunctional uterine bleeding.  AT 137.

On February 16, 2004, Plaintiff saw Mark Tallman, M.D., a cardiologist, for a preoperative risk assessment for gastric reduction surgery.  AT 131-32.  Dr. Tallman found that Plaintiff's risk

---

[1] Hypersomnolence is also known as hypersomnia, which is excessive sleeping or sleepiness.  Dorland's Illustrated Medical Dictionary 909 (31st ed. 2007) (hereinafter "Dorland's").

[2] A hysteroscopy is an inspection of the interior of the uterus with an endoscope.  Dorland's at 922.

[3] D&C refers to dilatation and curettage.  Dorland's at 2139.

2

was low.  AT 132.  He diagnosed her as suffering from a left hemiblock, morbid obesity, and dyspnea.  Id.

On February 17, 2004, Plaintiff was examined by Alyse Bellomo, M.D., a gastroenterologist.  AT 134-36.  Dr. Bellomo diagnosed Plaintiff as suffering from obesity.  AT 135-36.  Dr. Bellomo performed an endoscopy of Plaintiff's stomach on March 1, 2004.[4]  AT 139.  The procedure revealed an ulceration due to the use of non-steroidal anti-inflammatory analgesics.  Id.  A biopsy revealed mild gastrisis.  AT 140.

On March 24, 2004, Plaintiff was examined by E. Taft, M.D.  AT 149-51.  Dr. Taft found that Plaintiff has an underlying bleeding defect, noting that vonWillebrand's disease[5] is "most likely."  AT 151.

On April 2, 2004, Plaintiff was examined by Vanessa Denning, M.D., a nutritionist.  AT 162-63.  Dr. Denning diagnosed Plaintiff as suffering from hyperlipoproteinemia, essential hypertension, degenerative joint disease, morbid obesity, and hypersomnolence.  AT 163.

On June 8, 2004, Plaintiff was examined at the request of the agency by Mario Brezler, M.D.  AT 207-11.  Dr. Brezler diagnosed Plaintiff as suffering from morbid obesity and hyperlipidemia, and noted a history of agoraphobia, idiopathic hypersomnia, and multiple D&Cs.  AT 211.  Dr. Brezler found no exertional limitations, but found that Plaintiff is limited in her ability to drive due to idiopathic hypersomnolence.  Id.

The record also contains a Physical Residual Functional Capacity ("RFC") Assessment completed by B. Anderson, a non-physician analyst, on June 17, 2004.  AT 183-88.  It was indicated that Plaintiff has no exertional limitations.  AT 184.  It was also indicated that Plaintiff has an

---

[4] An endoscopy is a visual inspection of any cavity of the body by means of an endoscope.  Dorland's at 627.

[5] von Willebrand disease is a congenital bleeding disorder.  Dorland's at 551.

environmental limitation, specifically that she should avoid hazards. AT 186.

### 2. Mental Condition

On June 8, 2004, Plaintiff was examined at the request of the agency by Annette Payne, Ph.D. AT 213-17. Dr. Payne diagnosed Plaintiff as suffering from panic disorder with agoraphobia, moderate to severe, and depressive disorder not otherwise specified. AT 216. Dr. Payne found that Plaintiff could follow and understand simple directions and instructions; perform simple, rote tasks under supervision; and consistently perform simple tasks. Id. Dr. Payne also found that Plaintiff would have difficulties performing the following: learning new tasks, performing complex tasks, making appropriate decisions, relating with others, and dealing with stress. Id. Dr. Payne concluded that Plaintiff's psychiatric difficulties are moderately to severely limiting, and recommended that Plaintiff may benefit from vocational rehabilitation. Id.

The record contains a Mental RFC Assessment completed by Richard B. Weiss, M.D. on June 21, 2004. AT 189-92. Dr. Weiss indicated that Plaintiff is limited moderately in her abilities to understand and remember detailed instructions; to carry out detailed instructions; to interact appropriately with the general public; and to set realistic goals or make plans independently of others. AT 189-90.

Dr. Weiss also completed a Psychiatric Review Technique Form in which he indicated under Listing 12.04 (Affective Disorders) that depressive disorder not otherwise specified is present. AT 196. Dr. Weiss also indicated that under Listing 12.06 (Anxiety Related Disorders) anxiety as a predominant disturbance or anxiety experienced in the attempt to master symptoms is present, as evidenced by recurrent severe panic attacks. AT 198. He further indicated that Plaintiff is slightly restricted in activities of daily living; has moderate difficulties maintaining social functioning; and seldom has deficiencies in maintaining concentration, persistence, or pace. AT 203. Dr. Weiss

found no repeated episodes of deterioration.  Id.

The record also contains a statement dated October 27, 2004 from Forman Phillips, Ph.D., a psychologist.  AT 223.  Dr. Phillips stated that he is treating Plaintiff for agoraphobia and that Plaintiff's "method of coping" with the condition is to "utilize a companion for support when appearing in public."  Id.  Dr. Phillips found that Plaintiff needs "special accommodations" which include "someone to accompany her during transportation to and from medical appointments [and] allowances for changes in scheduling appointments to accommodate her finding a companion to accompany her."  Id.

## II. DISCUSSION

### A. Disability Standard

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

>mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. Berry, 675 F.2d at 467 (citations omitted).

In this case, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. AT 17. At the second step, the ALJ determined that Plaintiff's anxiety attacks with agoraphobia and obesity are severe impairments. AT 19. At the third step, the ALJ concluded that those impairments neither met nor equaled any impairment listed in Appendix 1 of the regulations. Id. At the fourth step, the ALJ found that Plaintiff has no exertional limitations and can perform simple routine tasks, but must avoid hazards and should not interact with the general public and coworkers. AT 21. Based on the testimony of a vocational expert, the ALJ found that Plaintiff is unable to perform her past relevant work, but could perform other work existing in the national economy. AT 21-22. The ALJ therefore concluded that Plaintiff was not disabled. AT 22.

B.     Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, inter alia, Johnson v. Bowen,

6

817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. Johnson, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

**C.    Duty to Develop Record**

An ALJ, unlike a trial judge, must affirmatively develop the record in light of the "essentially non-adversarial nature of a benefits proceeding," even if the claimant is represented by counsel. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996) and Echevarria v. Secretary of Health and Human Servs., 685 F.2d 751, 755 (2d Cir.1982)). The regulations thus provide, "We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. §§ 404.1512(d), 416.912(d). "Every reasonable effort" is defined as making an initial request for evidence from a medical source and, at any time between ten and twenty calendar days after the initial request, if the evidence has not been received, making one followup request to obtain the medical evidence necessary to make a determination. 20 C.F.R. §§ 404.1512(d)(1), 416.912(d)(1).

Plaintiff argues that the record was not developed fully. Dkt. No. 8 at 12. Plaintiff claims that "at the time she filed her applications," she identified thirteen "treating sources," but that the Agency erred by contacting "only four of the listed sources" for medical records. Id.

To the extent that Plaintiff is referring to the sources listed in a disability report dated April 12, 2004, which was filed at approximately the time Plaintiff filed her applications, AT 81-90, in the report, Plaintiff identified the following sources as those who may have medical records or information about her condition: Dr. Nassar, Dr. Henriques, Dr. Singh, Dr. Denning, Dr. Bellomo, Dr. Tallman, and Dr. Taft. AT 84-85, 89-90. She also identified the following sources with regard to medical testing: Dr. Smith; Capital Cardiology Associates; Capital Imaging; Albany Medical Center; Albany Memorial; and Samaritan Hospital. AT 87.

A review of the record reveals evidence from the aforementioned sources except for Dr. Smith, Dr. Nassar, and Dr. Singh. Regarding Dr. Smith and Dr. Nassar, the omission of records

8

from these physicians is striking due to the fact that Plaintiff alleges disability due in part to narcolepsy and idiopathic hypersomnolence, and identifies Dr. Smith and Dr. Nassar as the sources who sent her for an EEG as "part of [a] sleep study" and for a breathing test. AT 82, 87. In light of the foregoing, every reasonable effort should have been made to obtain medical reports from Dr. Smith and Dr. Nassar.

Similarly, regarding Dr. Singh, the omission of records from this source is striking. Plaintiff claims that Dr. Singh evaluated her for bariatric surgery for severe morbid obesity, which is one of her alleged disabling conditions. See AT 82, 85. Defendant admits that Dr. Singh was not contacted, but argues, "According to plaintiff, Dr. Singh was not a treating source, as he had seen her once for just an evaluation." Dkt. No. 9 at 21. However, the regulations provide, "We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. §§ 404.1512(d), 416.912(d). "Medical sources" is defined as "acceptable medical sources, or other health care providers who are not acceptable medical sources." 20 C.F.R. §§ 404.1502, 416.902. Acceptable medical sources include nontreating sources. Id. Accordingly, every reasonable effort should have been made to obtain medical records from Dr. Singh.

The record also contains a form titled "Claimant's Recent Medical Treatment," which identifies physicians Plaintiff saw since June 8, 2004. AT 128-30. The form indicates that Plaintiff saw Dr. Phillips, Dr. Frederick Fletcher, Dr. Mark Yocono, and Dr. Bellomo. AT 128.

The record contains evidence from Dr. Bellomo and Dr. Phillips. AT 134-36, 139, 223. However, regarding Dr. Phillips, in his decision, the ALJ referenced "Exhibit 17" which apparently consists of treatment records from Dr. Phillips that were submitted by Plaintiff's counsel following the hearing. AT 19. The record before this Court is missing Exhibit 17. Accordingly, the matter

must be remanded so that this missing exhibit is included in the record.

Regarding Dr. Fletcher and Dr. Yocono, the record contains no documents from these sources. Defendant admits that these sources were not contacted, but argues that this was not error because Plaintiff saw these physicians on one occasion. Dkt. No. 9 at 21. However, as noted, the regulations provide that every reasonable effort will be made to help a claimant obtain medical reports from medical sources, which includes nontreating sources. 20 C.F.R. §§ 404.1502, 404.1512(d), 416.902, 416.912(d). Therefore, every reasonable effort should have been made to obtain medical reports from Dr. Fletcher and Dr. Yocono.

In light of the forgoing, the matter must be remanded so that every reasonable effort is made to obtain records from Dr. Nassar, Dr. Smith, Dr. Fletcher, and Dr. Yocono, and in order for Exhibit 17 to be included in the record.

### D. Severity

Plaintiff claims that the ALJ erred by failing to find that her arthritis and depressive disorder were severe impairments. Dkt. No. 8 at 11.

Step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities. An impairment is severe if it significantly limits physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments are severe. Id. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).

The severity analysis does no more than "screen out *de minimis* claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above the *de minimis* level, then

further analysis is warranted. Id. Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; Dixon, 54 F.3d at 1031.

Regarding Plaintiff's arthritis, while the ALJ noted that Plaintiff alleged disability due in part to arthritis, AT 17, and noted Dr. Brezler's finding that Plaintiff's joints were stable and nontender, AT 18; see AT 210-11, the ALJ failed to discuss the severity of this condition. Accordingly, the Court is unable to find that the ALJ's determination regarding Plaintiff's arthritis is supported by substantial evidence; therefore the matter must be remanded.

Regarding Plaintiff's depressive disorder, the ALJ also failed to explain clearly why he found that this condition is not severe even though the ALJ noted that Dr. Payne and Dr. Weiss diagnosed Plaintiff as suffering from depressive disorder. AT 19, 20. Moreover, in discussing Plaintiff's mental impairments, the ALJ cited the records from Dr. Phillips that are missing from the record before the Court. AT 19. Accordingly, the Court is unable to determine that the ALJ's finding regarding Plaintiff's depressive disorder is supported by substantial evidence; therefore the matter must be remanded.

### E.     Listed Impairments

Plaintiff argues that the ALJ erred by failing to find that Plaintiff's obesity coupled with her anxiety and agoraphobia meet Listings 12.04 and 12.06. Dkt. No. 8 at 11. Listing 12.04 pertains to affective disorders while Listing 12.06 pertains to anxiety related disorders. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06.

In this case, the ALJ specifically relied on the records of Dr. Phillips while deciding that Plaintiff's condition did not meet or equal any listed impairments. AT 19. As this evidence is

missing from the record, the Court is unable to determine if the ALJ's findings are supported by substantial evidence. On remand, the missing documents pertaining to Plaintiff's treatment with Dr. Phillips must be obtained.

  **F.**  **Credibility**

  "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. See 20 C.F.R. §§ 404.1529, 416.929; see also Foster v. Callahan, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

  First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. Id. §§ 404.1529(c), 416.929(c).

  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects

of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. Id. §§ 404.1529(c)(3), 416.929(c)(3).

In this case, the ALJ found that Plaintiff's subjective complaints "are only partially credible." AT 20. The ALJ then noted that Plaintiff's "alleged extreme needs with regard to her anxiety" are not supported by the "record, as a whole." Id. The Court is unable to conclude that the ALJ's analysis is supported by substantial evidence because the "whole" record is not before the Court. As noted, Exhibit 17 is missing from the record. Moreover, several medical sources should have been contacted for medical records.

The Court also notes that the ALJ failed to discuss all of the required factors. For instance, the ALJ failed to discuss the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms. At the hearing, Plaintiff testified that she takes Zoloft, which makes her drowsy. AT 238. The ALJ also failed to discuss certain measures taken by Plaintiff to relieve symptoms. Plaintiff testified that she utilizes a mask as a sleeping aide and stated, "I still have the marks from the mask from this morning." AT 242.

Accordingly, the Court is unable to determine that the credibility determination is supported by substantial evidence because evidence is missing from the record and the ALJ failed to discuss all of the required factors. Therefore, the matter must be remanded.

**G.     Step Five Determination**

Plaintiff challenges the ALJ's findings made at step five of the sequential evaluation. Dkt. No. 8 at 14-15.

At the fifth step of the sequential evaluation of disability, the Commissioner bears the

responsibility of proving that a claimant is capable of performing other jobs existing in significant numbers in the national economy in light of the claimant's RFC, age, education, and past relevant work.  20 C.F.R. §§ 416.920, 416.960.  Ordinarily, the Commissioner meets his burden at this step "by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)."  Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).  However, sole reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's limitations.  Id. at 606.  For example, use of the grids as the exclusive framework for making a disability determination may be precluded where a claimant's physical limitations are combined with non-exertional impairments which further limit the range of work she can perform.  Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996).  In these circumstances, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  Bapp, 802 F.2d at 603; see also Melchior v. Apfel, 15 F. Supp. 2d 215, 222 (N.D.N.Y. 1998) (stating "where nonexertional limitations significantly diminish the ability to perform a full range of work, it is appropriate that the ALJ present testimony from a vocational expert").  The "[p]roper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform."  Lugo v. Chater, 932 F. Supp. 497, 503 (S.D.N.Y. 1996).  Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion."  Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983).

> In this case, the ALJ found that Plaintiff retained the following RFC:
>
> [Plaintiff] has no exertional limitations.  The claimant must avoid hazards.  The claimant can perform simple routine tasks.  To the extent possible, the claimant's work should not involve interaction with the general public and coworkers.

AT 21.  Based on the testimony of the vocational expert, the ALJ then concluded that Plaintiff is unable to perform her past relevant work, but is capable of "making a successful adjustment to work that exists in significant numbers in the national economy."  Id.

The Court is unable to determine that the RFC finding on which the ALJ relied while posing hypothetical questions to the vocational expert is supported by substantial evidence.  As noted, Exhibit 17 is missing from the record and several medical sources should have been contacted for medical records.  Accordingly, the matter must be remanded.  Once these deficiencies are corrected, Plaintiff's RFC may then be re-evaluated.

**WHEREFORE**, it is hereby

**ORDERED**, that the case be **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Decision and Order; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:  April 15, 2008
        Albany, New York

Lawrence E. Kahn
U.S. District Judge